IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENT PURCHASE, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 12-CV-266-NJR-SCW |
| | ) |
| SHAWNEE COMMUNITY COLLEGE, | ) |
| | ) |
|        Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter came before the Court on September 8, 2014, for a hearing on the amended motion for summary judgment, which was filed by Defendant Shawnee Community College on January 29, 2014 (Doc. 43). For the reasons set forth below and those stated on the record, the amended motion for summary judgment is granted, and this case is dismissed on the merits.

## BACKGROUND

Plaintiff, Kent Purchase, is African-American. He was hired to work in the maintenance department at Shawnee Community College ("the College") on June 23, 2008 (Doc. 43-2). Don Koch was Purchase's immediate supervisor and in charge of the maintenance department (Doc. 43-5). There were three other men in the maintenance department besides Purchase, two of whom had been hired in 2005 and one who had been hired in 1988 (Doc. 43-2). All four men received performance evaluations on

February 23, 2010 (Docs. 43-6, 43-7, 43-8, 43-9). Purchase received a score of 22, and the other three men received scores of 24, 24, and 32, respectively.

In early 2010, the College was forced to do a reduction in force and terminate the positions of eleven employees because the State of Illinois failed to provide all of the funding the College was supposed to receive (Doc. 43-5). It was determined that one of those eleven employees was going to be a member of the maintenance staff (Doc. 43-5). Tiffiney Ryan, the Chief Financial Officer at the College, asked Don Koch to recommend which member of the maintenance staff should be terminated (Doc. 43-5). Koch recommended Purchase because he had the least seniority and also received a slightly lower performance evaluation than the other members of the maintenance staff (Doc. 43-5). The Board of Trustees ultimately approved Purchase's termination (Doc. 43-5). On March 30, 2010, Purchase was notified that he was being terminated due to a reduction in force, effective June 30, 2010 (Doc. 43-3). Of the eleven employees who were terminated as part of the reduction in force, eight were Caucasian, two were African-American, including Purchase, and one was biracial (Caucasian and Asian) (Doc. 43-3).

According to Tiffiney Ryan, if the College had received appropriate funding, Purchase's position would not have been eliminated, and he would have been recommended for continued employment (Doc. 43-5). Purchase's position has not been refilled (Doc. 43-5).

## PROCEDURAL HISTORY

Purchase filed a charge of discrimination with the Equal Employment

Opportunity Commission, and he was notified on December 28, 2011, that the charge had been dismissed, and he had ninety days in which to file suit (Doc. 1). Purchase filed a timely *pro se* complaint in this Court on March 27, 2012 (Doc. 1). The complaint alleges that the College violated Title VII, the American with Disabilities Act, the Genetic Information Nondiscrimination Act, and the Age Discrimination in Employment Act (Doc. 1). The complaint alleges facts giving rise to claims of hostile work environment and racial discrimination in violation of Title VII, discrimination on the basis of disability in violation of the Americans with Disabilities Act, and retaliatory discharge (Doc. 1).

The College filed its amended motion for summary judgment on January 29, 2014, on the claims of hostile work environment, racial discrimination, and disability discrimination (Doc. 43). Purchase filed a response on February 27, 2014 (Doc. 45). A hearing on the motion was scheduled for September 8, 2014, at 11 a.m. in front of the undersigned judge (Doc. 49). On June 17, 2014, a notice of hearing was sent to Purchase at the address he had on record with the Court via first-class mail. Purchase, however, failed to appear at the hearing. The purpose of the hearing was to provide the litigants an opportunity to speak to the Court in person and to offer additional arguments. Accordingly, Purchase's absence from the hearing *did not* factor into the Court's decision to grant the motion for summary judgment in favor of the College and against Purchase.

## DISCUSSION

### A. Claims Not Addressed in the Amended Motion for Summary Judgment

As an initial matter, the Court wishes to address three claims purportedly brought in the complaint that the College did not mention in its amended motion for

summary judgment.

In the first sentence of the complaint, Purchase states that he is proceeding in part under the Genetic Information Nondiscrimination Act ("GINA") and the Age Discrimination in Employment Act ("ADEA"). To the extent that is true, those claims must be dismissed for failure to state a claim. Purchase failed to state a GINA claim because he did not describe any genetic information about himself that was disclosed to the College or describe any adverse employment action that was taken against him on account of this characteristic. Purchase failed to state an ADEA claim because he never mentioned how old he is, or how old the other maintenance workers are, nor did he describe any adverse employment actions that were taken against him on account of his age.

The complaint also contains allegations suggesting Purchase intended to bring a claim for retaliatory discharge against the College. Specifically, Purchase alleges that he was discharged because he filed two worker's compensation claims (Doc. 1). However, that claim cannot be brought under Title VII because Title VII only prohibits retaliation against an employee for the employee's involvement in combatting discrimination based on sex, race, national origin, or some other protected class. 42 U.S.C. § 2000e-2(a)(1); *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 704 (7th Cir. 2000) (explaining that Title VII "protects persons not just from certain forms of job discrimination and harassment, but from retaliation for complaining about the types of discrimination it prohibits.") (internal citations omitted). Instead, that claim must be brought under the Illinois Workers' Compensation Act. However, because none of the

claims over which the Court has original jurisdiction survives summary judgment, the Court declines to exercise supplemental jurisdiction over his state law claims of retaliatory discharge. *See* 28 U.S.C. § 1367(c)(3).

**B. Amended Motion for Summary Judgment**

The Court now turns to the merits of the College's amended motion for summary judgment. The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial.… A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

**1. Hostile Work Environment**

The College first argued that summary judgment was warranted on Purchase's claim under Title VII for hostile work environment. The Court agrees. "Title VII

prohibits the creation of a hostile work environment." *Vance v. Ball State University*, 133 S. Ct. 2434, 2441 (2013). To avoid summary judgment, the employee must establish: (1) that the work environment was both objectively and subjectively offensive, (2) that the harassment was based on his membership in a protected class, (3) that the conduct was either severe or pervasive, and (4) that there is a basis for employer liability. *Vance v. Ball State University*, 646 F.3d 461, 469 (7th Cir. 2011), *aff'd* 133 S. Ct. 2434 (2013).

In considering the facts in the light most favorable to Purchase, the Court finds that he has failed to establish the first element—that his work environment was objectively hostile. In determining whether contested conduct actually created an objectively hostile work environment, the Court must look at all of the surrounding circumstances and social context, including whether the conduct was frequent or severe, physically threatening or humiliating, and or unreasonably interfered with the employee's work performance. *McKenzie v. Milwaukee County*, 381 F.3d 619, 624 (7th Cir. 2004); *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) (citation omitted).

In the complaint, Purchase alleged that he was subjected to a hostile work environment by "his supervisor and his Vice President of the maintenance department in the form of ignoring him and giving him lesser work loads to do" (Doc. 1). At his deposition, Purchase said Tiffiney Ryan would "ignore [him] in the hallways, when she would normally stop and we would have a short conversation of something. And she would ignore me" (Doc. 43-1). And Don Koch would "kind of dodge me or something" and "I wouldn't hardly see him in the afternoons" (Doc. 43-1). He also said that he felt

intimidated by the other maintenance workers who were handling heavier workloads than he was (Doc. 1, Doc. 45).

While Ryan and Koch's conduct of ignoring or avoiding Purchase can be considered aloof and rude, it falls short of an objectively hostile or abusive work environment. *See McKenzie v. Milwaukee County*, 381 F.3d 619, 624–25 (7th Cir. 2004) (affirming summary judgment and holding supervisor's failure to greet employee and "standoffish, unfriendly, and unapproachable" behavior failed to establish objectively hostile work environment); *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (affirming summary judgment and holding that plaintiff's claim that supervisor treated her rudely, ignored her suggestions, concealed information about changes at work, and severely criticized her without good reason did not establish hostile work environment). As for Purchase's allegation that his lighter workload created a hostile work environment, he never explained how or why he felt intimidated or abused, and there is no evidence from which the Court can infer an explanation. Accordingly, this claim is factually unsupported and insufficient to avoid summary judgment.

Even if the conduct of Ryan, Koch, and the other maintenance workers was objectively hostile and abusive, summary judgment is still appropriate because Purchase also failed to establish the second element—that the conduct was based on his race. At his deposition, Purchase testified that he believed Tiffiney Ryan and Don Koch ignored or avoided him because "they must have known that this was coming down, the layoff" (Doc. 43-1). Purchase was then asked if he could think of any other reason they might have ignored or avoided him, and he said "no, not right now" (Doc. 43-1). As for his

reduced workload, Purchase testified that he noticed he was given less work after he was injured for the second time on the job (Doc. 43-1). He never asserted or provided any evidence that his reduced workload was because of his race. Therefore, by Purchase's own admissions, the conduct of Ryan, Koch, and his co-workers was not race-related.

Because Purchase failed to offer any evidence that he was subjected to an objectively hostile work environment due to his race, the College is entitled to summary judgment on the claim of hostile work environment.

### 2. Racial Discrimination

The College next argued that summary judgment was warranted on Purchase's claim under Title VII for racial discrimination. Again, the Court agrees. Under the *McDonnell Douglas* indirect method of proof, a plaintiff can establish a *prima facie* case of discrimination by showing (1) that he was a member of a protected class, (2) that he was performing his job satisfactorily, (3) that he experienced an adverse employment action, and (4) that similarly situated individuals who were not in the protected class were treated more favorably. *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Once the plaintiff has made out a *prima facie* case, thus giving rise to an inference of discrimination, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the employment action. *Stockwell*, 597 F.3d at 901. Once the employer has articulated a legitimate, nondiscriminatory reason for its decision, the presumption of discrimination falls away, and the burden shifts back to the plaintiff to produce sufficient evidence showing that

reason to be pretextual. *Id.*

In considering the facts in the light most favorable to Purchase, the Court finds that he has failed to establish the fourth and final element of the *prima facie* case—that the other members of the maintenance staff who were white were similarly situated to him and treated more favorably. To be similarly situated, the plaintiff and the other individual must be "directly comparable in all material respects." *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009). It is undisputed that Purchase was low man on the totem pole in terms of seniority. Two of the other maintenance workers had been on the job for three years longer than Purchase, and Purchase estimated that the third worker had been on the job for over 15 years longer than him. "In some circumstances, differences in seniority will preclude a showing that two employees are 'similarly situated.'" *Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1062 (7th Cir. 2008).

Purchase attempts to argue that he was similarly situated to the other maintenance workers despite the fact that he had less seniority because he had more education and experience. In particular, Purchase claims that he went to trade school for two years and had thirty years' experience. In his mind, he was "far more qualified than [his] co-workers" (Doc. 45). However, Purchase failed to put forth any evidence to support his claim regarding his education and experience. He also failed to put forth any allegations, let alone supporting evidence, regarding the education and experience of the other maintenance men. Therefore, there is nothing from which a reasonable jury could conclude that Purchase was similarly situated to the other maintenance workers in all material respects, and Purchase cannot establish a *prima facie* case of racial

discrimination.

Even if Purchase had established his *prima facie* case, the College gave a legitimate, nondiscriminatory reason for terminating him: it had to eliminate a maintenance position, and Purchase had the least seniority and the lowest evaluation score among the members of the maintenance staff. Purchase failed to produce sufficient evidence showing that reason is pretext.

Accordingly, summary judgment must be granted in favor of the College and against Purchase on his claim of racial discrimination.

### 3. Disability Discrimination

The College's final argument was that summary judgment was warranted on Purchase's claim under the Americans with Disabilities Act ("ADA"). The first element that a plaintiff must establish for a disability discrimination claim is that he is disabled within the meaning of the ADA. *See Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 951 (7th Cir. 2000). To be disabled within the meaning of the ADA, the plaintiff must have a physical or mental impairment that substantially limits one or more major life activity. *Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011) (citing 42 U.S.C. § 12102(1)).[1]

Purchase claims that he has a bad back and two bad knees. And in his response to the motion for summary judgment, he claims that his back and knee impairments limit his ability to work, walk, bend, stoop, climb, lift, sleep, and care for himself (Doc. 45). According to the interpretive federal regulations, most, if not all, of those activities

---

[1] An individual is also disabled within the meaning of the ADA if there is a record of a physical or mental impairment that substantially limits one or more major life activities, or the individual is regarded as having such an impairment. 42 U.S.C. § 12102(1). There is nothing in the record that suggests Purchase is proceeding under either of those theories.

are considered "major life activities." 29 C.F.R. § 1630.2(i). Thus, the Court is left to determine whether a reasonable jury could conclude that Purchase was substantially limited in those activities. The answer to that question is "no."

In 2008, Congress passed the ADA Amendments Act of 2008 ("ADAAA"), and the standard for determining whether a plaintiff is substantially limited in engaging in a major life activity was relaxed. *See* 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.2(j)(1)(i). The interpretative regulations now provide that the term "substantially limits" is to be construed broadly in favor of coverage and is not meant to be a demanding standard. 29 C.F.R. § 1630.2(j)(1)(i). The Court is to consider whether the impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). The regulations instruct that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability." *Id.*

Despite the lower standard, Purchase still cannot establish that his physical impairments substantially limited his ability to perform one or more major life activities at the time he was discharged. Purchase testified at his deposition about his physical impairments during the time that he worked at the College. He stated that he fell down some steps and suffered a back injury many years before he started working at the College (Doc. 43-1). The back injury did not prevent him from working, but it made working "more painful" (Doc. 43-1). He also injured his right knee at the College in

September 2008 (Doc. 43-1). He underwent a successful surgery to repair a torn meniscus, and he had no limitations afterwards (Doc. 43-1). He then injured his left knee at the College in December 2009 (Doc. 43-1). However, he returned to work immediately without taking any time off (Doc. 43-1). He stated that the second knee injury did not prohibit him from working, but he had "some difficulty" (Doc. 43-1). When asked to elaborate on the difficulty he had, Purchase stated "Just climbing. And that's - - more climbing than anything, I guess. And bending and maybe stooping some" (Doc. 43-1).

Based on Purchase's testimony, the Court finds that there is not enough evidence in the record for a jury to conclude that, at the time he was discharged, Purchase's impairments substantially limited his ability to work, climb, bend, or stoop in comparison to the abilities of an average person. Purchase's testimony is couched in vague terms and unaccompanied by any evidence that his purported impairments were any worse than those suffered by many adults. Accordingly, it offers nothing more than a scintilla of evidence, which is insufficient to defeat summary judgment. Furthermore, Purchase offered absolutely no evidence that his impairments substantially limited his ability walk, lift, sleep, and care for himself at the time he was discharged.

In sum, Purchase has failed to come forward with evidence showing that he is substantially limited in one or more major life activities, and consequently, he does not meet the definition of disabled under the ADA. Accordingly, he cannot succeed on his disability discrimination claim, and the College is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons and those stated on the record, the amended motion for summary judgment filed by Defendant Shawnee Community College (Doc. 43) is **GRANTED**. Plaintiff Kent Purchase's claims under the Genetic Information Nondiscrimination Act and the Age Discrimination in Employment Act are **DISMISSED**. The Court declines to exercise supplemental jurisdiction over Purchase's claim for retaliatory discharge, and thus the claim is **DISMISSED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED:   September 11, 2014**

s/ Nancy J. Rosenstengel
**NANCY J. ROSENSTENGEL**
**United States District Judge**
